UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>    v.<br><br>EDWARD CRAGG,<br><br>           Defendant. | Case No.: 1:17-cr-00012 JLT SKO<br><br>ORDER RE MOTIONS IN LIMINE<br><br>(Docs. 314) |

I. **INTRODUCTION**

On January 19, 2017, a grand jury charged Mr. Cragg with one count of receipt and distribution of material involving the sexual exploitation of minors, in violation of 18 U.S.C. § 2252(a)(2). (Doc. 1.) A two-day jury trial commenced May 22, 2018, before U.S. District Judge Lawrence J. O'Neill, at which Mr. Cragg represented himself. (Docs. 92, 93.) The jury returned a guilty verdict. (Doc. 96.) On March 31, 2020, the Ninth Circuit reversed the conviction because the record did not indicate that Mr. Cragg had been advised of the potential penalty associated with the charge before the Court permitted him to proceed to trial without counsel. (Doc. 190.) The case is set for a jury retrial beginning September 9, 2025. (Doc. 311.)

On February 11, 2025, the Court denied Mr. Cragg's motion to suppress evidence seized pursuant to a warrant that authorized the search of his apartment in Turlock, California. (Doc. 315.) On August 4, 2024, Mr. Cragg filed a motion in limine seeking to exclude from trial some of the same evidence addressed in the order denying the motion to suppress. (Doc. 314.)

1

Specifically, Mr. Cragg asserts that seized Items 17 and 23 (Government Exhibits 17 and 23, respectively), both of which are described as "computer towers," were "improperly mounted," during the government's search of those items, "irretrievably altering the computers and overwriting unallocated space by creating over 2,000 new files and modifying over 3,100 exiting files on Exhibit 17 and creating over 2,220 files and modifying over 2,900 exiting files on Exhibit 23." (*Id*. at 1–2.) Mr. Cragg argues that these Items should therefore be excluded pursuant to the best evidence rule, Fed. R. Evid. 1001–1004. (*Id*. at 1.) Mr. Cragg's motion in limine is supported by the declaration of Josiah Roloff. (Doc. 315.) The government opposes. (Doc. 314.) For the reasons set forth below, the motion is **DENIED**.

## II. FACTUAL BACKGROUND

While executing a residential search warrant on March 1, 2016, Turlock Police Detective Timothy Redd seized numerous electronic devices belonging to Mr. Cragg, including: a large, water-cooled Thermaltake computer tower (Item 17) and a large, water-cooled Republic of Gamers computer tower (Item 23). (Declaration of Timothy Redd, Doc. 317-1, Attach. A, ¶ 4.) That same day, Detective Redd utilized "OS Triage," a software tool developed by a Federal Bureau of Investigation agent as an "aid for agents and investigators to relatively quickly determine whether an electronic device likely contained relevant evidence," in an attempt to capture "volatile data that might otherwise be lost if a device were powered off before forensic tools were applied." (*Id*., ¶ 5.)

Detective Redd received training in the use of OS Triage prior to March 1, 2006. (*Id*., ¶ 6.) He explains that one "trade off" in using this tool is that it can, and usually does, alter data on the device on which the program is operated. (*Id*., ¶ 5.) Nonetheless, OS Triage has been vetted and approved by the FBI for use by agents and other investigators. (*Id*.)

OS Triage operates via a USB device that can be plugged into the target device and then is supposed to analyze data on the device, generate a report, and store the report on that same USB device. (*Id*., ¶ 6.) Detective Redd applied OS Triage to Items 17 and 23 on March 1, 2006, but the program did not capture any data or generate a report. (*Id*., ¶¶ 7–8.)

Due to the complex nature of the devices, Detective Redd next took the devices to

1   Detective Hively, with the Ceres Police Department, on March 30, 2016. (*Id.*, ¶¶ 9–10.) Detective
2   Hively created forensic copies of two solid state drives within Item 17. (*Id.*, ¶ 12.) Detective
3   Hively also located at least 207 files from the "incomplete" folder associated with a peer-to-peer
4   file sharing program on Item 17. (*Id.*)

5         That same day, Detective Arthur Hively created forensic images of two of the ten solid
6   state hard drives within Item 23. (*See* Declaration of Arthur Hively, Doc. 317-1, Attach. B, ¶ 7.).
7   Detective Hively was not able to create forensic images of the additional eight hard drives. (*Id.* at
8   3.) Instead, between March 31 and April 6, 2016, Detective Hively and Detective Redd connected
9   the computer to a monitor, keyboard, and mouse and examined the machine in a "live" condition.
10  (*Id.*) According to Detective Redd, this live examination "means that some data on the computer
11  was altered, just as happens any time a computer is turned on." (*Id.*) During this examination, the
12  investigators did not locate any complete files that depicted the sexual abuse of minors, although
13  we did locate titles that suggested the files contained videos of children being sexually abused."
14  (*Id.*)

15        On April 13, 2016, Detective Redd picked up Items 17 and 23 from Detective Hively.
16  (Redd Decl., ¶ 14.) On that same day, Detective Redd used a program called ADF Triage
17  Examiner to analyze Item 23 for additional evidence.[1] (*Id.*) That analysis revealed that there were
18  four file titles that were indicative of child sexual exploitation. (*Id.*)

19        Defense forensic examiner Joisah Roloff indicates, and the government does not dispute,
20  that on March 1, 2016, a USB drive was plugged into Exhibit 17 and thereafter "over 2,000 files
21  were created and over 3,100 files were modified" on the device. (Declaration of Josiah Roloff,
22  Doc. 315, ¶ 2.) According to Roloff:

> Of the 2,000 files that were created and 3,100 that were modified on Exhibit 17, after the foreign USB drive was plugged in: 1,901 were created and 2,739 were modified on March 1, 2016; 146 were created and 454 modified on March 2, 2016; and one file was modified on July 1, 2016.

26  (*Id.*)

---

[1] According to the government's brief, as with OS Triage, the ADF Triage Examiner program can also cause new files to be created on the device. (Doc. 317 at 2–3.) However, the Court can find no evidentiary support for this statement.

3

1     Mr. Roloff also determined that on March 1, 2016, a different USB device was connected
2 to Item 23. (*Id*., ¶ 3.) Beginning on that day, over 2,220 files were created and over 2,900 files
3 were modified within Exhibit 23. (*Id*.) Of these, "2092 files were created and 2142 were modified
4 on March 1, 2016; 93 files were created and 480 files were modified on April 4, 2016; six files
5 were created and nine files modified on April 5, 2016; and finally, 30 files were created and 275
6 files were modified on April 6, 2016." (*Id*.) In addition, Mr. Roloff asserts that the "storage RAID
7 arrays" within Item 23 were also modified on March 1, 2016 prior to the creation of a forensic
8 image. (*Id*., ¶ 4.) Specifically, a certain number of new files were created, and other files were
9 modified within those storage arrays. (*Id*.)

## III.     Legal Standards Governing Motions in Limine

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). The Ninth Circuit explained that motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." *Brodit v. Cabra*, 350 F.3d 985, 1004–05 (9th Cir. 2003) (citations omitted). Courts disfavor motions in limine seeking to exclude broad categories of evidence. *See Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Nevertheless, motions in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child & Family Services*, 115 F.3d 436, 440 (7th Cir. 1997).

"[A] motion in limine should not be used to resolve factual disputes or weigh evidence," *C & E Services, Inc. v. Ashland Inc*., 539 F. Supp. 2d 316, 323 (D.D.C. 2008), because that is the province of the jury. *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000). The Court will bar use of the evidence in question only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. *Jonasson*, 115 F. 3d at 440.

Moreover, the rulings on the motions in limine do not preclude either party from arguing the admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrates a change of circumstances that would make the evidence admissible. In this event, the proponent of

4

the evidence **SHALL** raise the issue with the Court outside the presence of the jury. Finally, the rulings made here are binding on all parties and not merely on the moving party.

## II.     ANALYSIS

The "best evidence" rule provides that the original of a "writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. The rule applies to computers. *See* Fed. R. Evid. 1001, Advisory Comm. Notes, Note to Paragraph (1)("[T]he considerations underlying the rule dictate its expansion to include computers, photographic systems, and other modern developments."). Rule 1003 provides that a "duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Relatedly, Rule 1004 provides:

> (a) All the originals are lost or destroyed, and not by the proponent acting in bad faith;
>
> (b) An original cannot be obtained by any available judicial process;
>
> (c) The party against whom the original would be offered had control of the original; was at that time put on notice, by pleadings or otherwise, that the original would be a subject of proof at the trial or hearing; and fails to produce it at the trial or hearing; or
>
> (d) The writing, recording, or photograph is not closely related to a controlling issue.

Because Mr. Cragg is challenging the admission of the evidence, he has the burden to demonstrate that a "genuine issue of authenticity exists." *United States v. Chapman*, 804 F.3d 895, 902 (7th Cir. 2015); *United States v. Chang An-Lo*, 851 F.2d 547, 557 (2d Cir. 1988) (quoting *United States v. Georgalis*, 631 F.2d 1199, 1205 (5th Cir. 1980) )*United States v. Yagman*, No. CR 06-227(A) SVW, 2007 WL 9724389, at *1 (C.D. Cal. May 18, 2007) (relying on *Chang An-Lo*).

The Court agrees with the government that the Defense has not met this burden. Though Mr. Roloff opines that files were created and/or modified on Items 17 and 23 between March 1,

1    2016, to July 1, 2016, before forensic copies were created, he does not assert that these additional

2    files altered the evidence saved on the device *before* March 1, 2016, when they were in Cragg's

3    apartment and being used by him. Moreover, the declarations by Detectives Redd and Hively

4    indicate these new files were created due to common investigative practices.

5        Even still, at the hearing, for the first time, the defense argues that because files were

6    created in the unallocated space, the files created by the investigation could have covered deleted

7    files which could show that the "contraband" items were not willingly obtained. There is no

8    evidence to suggest this, none of the experts offer any support for this and the defense offers to

9    evidence to support this rumination. Moreover, it is directly contrary to what Mr. Cragg stated at

10   his first hearing. (Doc. 156 at 5)

11       Also, the defense argues that Exhibits 17 and 23 are not originals due to the files added by

12   the investigation but also argues that the originals were not lost or destroyed. In *United States v.*

13   *Ehmer*, 87 F.4th 1073, 11-23-1124 (9th Cir. 2023), the Court encountered a similar situation. In

14   *Ehmer*, the government sought to introduce an interview given by a co-conspirator. The interview

15   was an edited version and was not complete. The defendants argued that it should not be admitted

16   because it violated the best evidence rule. The Ninth Circuit held,

17-28
> As we have explained, there was an adequate foundation to conclude that Exhibit 23 was an authentic "duplicate" of the excerpted portions of the OPB report that was posted on the OPB website, and it was therefore admissible under Rule 1003's exception to Rule 1002's best evidence rule. *See* FED. R. EVID. 1003 ("A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."). [The defendants] contend, however, that the relevant "original" is the entire OPB interview with [the co-conspirator], and that the absence of the remainder of the interview makes it "unfair to admit the duplicate." *See id.,* advis. comm. note (1972 proposed rule) ("Other reasons for acquiring the original may be present when only a part of the original is reproduced and the remainder is needed for cross-examination or may disclose matters qualifying the part offered or otherwise useful to the opposing party."). But to the extent that the full OPB interview with [the co-conspirator] were deemed to be the relevant "original," the admission of Exhibit 23 would then be covered by the different exception to the best evidence rule contained in Rule 1004(a), which provides that "[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if: (a) all the originals are lost or destroyed, and not by the proponent acting in bad faith." *See* FED. R. EVID. 1004(a). Given OPB's explicit representation, at the hearing on the motion to quash, that the original complete interview no longer existed, the district court had ample ground to conclude that the original had been lost or destroyed and that its absence was "[n]ot through any fault of the Government" or of [the defendants]. *See* FED. R.

> EVID. 104(a) (noting that, in making preliminary determinations relevant to admissibility, "the court is not bound by evidence rules, except those on privilege"); *see also United States v. Workinger*, 90 F.3d 1409, 1415 (9th Cir. 1996) (holding that the "best evidence rule was not violated" when the original recording of a deposition had been erased by the counsel who took the deposition "in the ordinary course of his business and not at the behest of the government").

*Id*. at 1124. The Court also rejected the argument that the rule of completeness required that the entire interview be considered by the jury at the same time. *Id.* at 1124-1125.

> Their objection . . . is that, because the remainder of the original underlying interview with [the co-conspirator] "had not been preserved," it "was impossible for either the parties or the trial court to determine whether [the co-conspirator's] statement, as proffered by the government, had been unfairly excerpted from the original recording." This argument misconceives the role of Rule 106. The rule, by its terms, does not exclude any evidence, but merely provides that, if all or part of a "recorded statement" is offered, then an opponent may require that certain additional parts or recorded statements must also be introduced contemporaneously if fairness requires. The fact that the additional recorded statements that the opponent would like to offer no longer exist simply means that the opponent lacks any additional statement to which the right of contemporaneous introduction conferred by Rule 106 might attach. Nothing in the language of Rule 106 says that, when the remainder of the recorded statement does not exist, the portion offered into evidence must be excluded. See 21A CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5078 (2d ed. 2005) ("Rule 106 does not give the opponent the power to prevent the proponent from introducing an incomplete statement; it only gives him the power to require that the statement be completed or to complete it himself.").

*Id*. Finally, the Court concluded that whether the statement should have been admitted, "despite its unavoidable incompleteness, instead raises a question of undue prejudice under Rule 403. *See id*. On that score, the district court did not abuse its discretion in concluding that the probative value of Exhibit 23 was not "substantially outweighed by a danger of ... unfair prejudice, confusing the issues, [or] misleading the jury." See FED. R. EVID. 403." *Id.*

The Sixth Circuit considered a similar situation in *United States v. Grayson*, 2025 WL 2366262 (6th Cir. 2025). In *Grayson*, the defendant hired a husband and wife to kill three people. *Id*. at *1. One of the purported assassins, Johnson, video-recorded a FaceTime call with the defendant in which the defendant made incriminating statements. *Id*. at *2. She used her husband's cell phone to record the FaceTime call with Grayson. *Id*. When Johnson emailed the video to herself, the recording was divided into two parts, resulting in 26 seconds being lost. *Id*. Johnson then deleted the original video from her husband's phone. *Id*. Grayson objected to the

1  introduction of the video at her trial because it was missing 26 seconds and, therefore, not an

2  original. *Id.* The the trial court overruled the objection and admitted the two segments as

3  duplicates. *Id*. At trial, Johnson testified explained how the recording was made, how emailing

4  the video caused it to split in two and to lose 26 seconds, and that the two segments were what

5  resulted. *Id*. The Sixth Circuit noted that this testimony "provided a sufficient basis for the jury to

6  find that the footage is what Johnson claimed it was—segments of the recorded call." *Id*.

7        Grayson argued on appeal that the two segments could not be authenticated due to the

8  missing 26 seconds such that it was error to admit them. *Grayson* at *4. She asserted that because

9  the disk containing the remedies was incomplete it was an "inauthentic record of the call." *Id*. The

10  Court disagreed:

11  > This argument seems to miss the point. "The key question under Federal Rule of
12  > Evidence 901 is whether 'the matter in question is what its proponent claims.'"
13  > *United States v. Damrah*, 412 F.3d 618, 628 (6th Cir. 2005). The government
14  > established the evidence was indeed portions of the recorded call through
15  > Johnson's testimony. If Grayson believed the video was "distorted in some
16  > significant way, or was edited and therefore misleading," that objection would
17  > better be "resolved pursuant to Federal Rule 403." 2 McCormick on Evidence §
18  > 216 (Robert M. Mosteller, ed., 9th ed. 2025) (footnote omitted); see Fed. R. Evid.
   > 403 (allowing for the exclusion of "relevant evidence if its probative value is
   > outweighed by a danger of ... unfair prejudice"). In the end, satisfying Rule 901
   > merely renders the recordings admissible; whether the evidence has persuasive
   > value, and, in particular, whether it leaves out critical information that undermines
   > its evidentiary value, are issues left for the jury. *See United States v. Jones*, 107
   > F.3d 1147, 1150 n.1 (6th Cir. 1997).

19  The Court also rejected the argument that the missing footage "posed any real problem or

20  contained particularly salient information." *Id*.

21        The Court also rejected that the use of the segments violated the best evidence rule.

22  *Grayson* at *4. The Court concluded,

23  > a duplicate is "admissible to the same extent as the original unless a genuine
   > question is raised about the original's authenticity or the circumstances make it
24  > unfair to admit the duplicate." Fed. R. Evid. 1003. A duplicate may also come into
   > evidence when the original has been either lost or destroyed by a proponent not
25  > acting in bad faith. Fed. R. Evid. 1004. In this case, both parties agree that the clips
   > of the FaceTime recordings are duplicates for the purposes of these rules. See
26  > Appellant Reply Br. 10; Appellee Br. 24.

27  > The district court did not abuse its discretion in finding the video clips were
   > admissible. As discussed, Johnson's testimony provided an adequate basis for the
28  > jury to conclude that the footage "was an authentic 'duplicate' of the excerpted

portions of" the FaceTime recording; the footage "was therefore admissible under Rule 1003's exception" allowing duplicates. *United States v. Ehmer*, 87 F.4th 1073, 1124 (9th Cir. 2023).

*Id*. The Court also rejected the defendant's argument that an altered original bars admission while citing Rule 1003 and 2 McCormick on Evidence § 236 (Robert M. Mosteller, ed., 9th ed. 2025) The Court concluded that, "we may permissibly treat the "altered original as 'destroyed' within the meaning of Federal Rule 1004." *Id*.

As in *Ehmer and Grayson*[2], here, the government seeks to introduce portions of Exhibits 17 and 23[3], and the defense offers no cogent argument that these portions are not authentic.[4]

Though the defense did not raise an objection under Rule 403, the Court does not find that there is more than minimal risk of jury confusion and this risk is significantly outweighed by the probative value of this evidence. Thus, Rule 403 does not support exclusion of Exhibits 17 or 23.

Finally, the fact that law enforcement caused Exhibits 17 and 23 to be altered does not require a different result. Though the officers *should* have created forensic images of these exhibits, the fact that they attempted to triage the devices first, given the sheer volume of data storage to review, does not, for purposes of this motion, equate to a finding of bad faith requiring this evidence to be excluded.

///
///
///
///
///
///

---

[2] The Court notes the differences between this case and Ehmer, but the Court does not find that the differences are so dramatic as to undermine the guidance provided by it.

[3] The Court does not understand the government to seek to introduce the files that were added as due to operating the devices in their native state.

[4] Moreover, the passing argument—not raised in the motion—that the files added by the investigation may have overwritten deleted materials that could demonstrate that the illicit material was not sought out by the defendant, is pure speculation. *Brady* requires more than speculation. *See United States v. Lucas*, 841 F.3d 796, 808 (9th Cir. 2016).

9

**III.     CONCLUSION**

For the reasons set forth above:

1. Defendant's motion in limine regarding exclusion of Items 17 and 23 as (Doc. 314) is **DENIED**.

IT IS SO ORDERED.

Dated:   **August 26, 2025**

_____
UNITED STATES DISTRICT JUDGE